1:23 MJ 4123

## AFFIDAVIT

I, DEA Special Agent Jonathan Fraser, being duly sworn, depose and say the following:

## INTRODUCTION

1. Your Affiant submits this affidavit in support of a criminal complaint and arrest warrant charging BRANDON KINGSTON and KENNETH WARE with conspiring to possess with intent to distribute and distribute controlled substances, in violation of 21 U.S.C. § 846, 841(a)(1), (b)(1)(A), and knowingly possessing with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) (b)(1)(A), on or about April 11, 2023.

## AGENT'S BACKGROUND

2. I have been a Special Agent with the Drug Enforcement Administration ("DEA") for approximately six years. During this time, I have been assigned investigative responsibilities in the area of drug law violations. Prior to my employment with the DEA, I was employed as Police Officer by the city of Dallas, Texas for approximately 19 months and the city of Clarksville, Tennessee, for approximately two years. I also spent approximately six years as a Human Intelligence Collector in the United States Army which included spending approximately 21 months forward deployed to Kandahar, Afghanistan, in support of Operation Enduring Freedom. I have completed the 20-week DEA Basic Agent Training course in Quantico, Virginia. As part of the BAT course, I have received training in narcotic investigations, narcotic interdiction, identification of narcotics, search and seizure issues, preparing search warrants, surveillance techniques, preparation and execution of narcotic search warrants, debriefing of defendants, witnesses, and cooperating sources. I am also a graduate of the

36-week basic Dallas Police Academy, and 10 week basic police officer course at the Tennessee Law Enforcement Training Academy. I attended the University of Toledo and graduated with a bachelor's of science degree in Criminal Justice.

3. I have been involved in numerous narcotics-related arrests, have executed search warrants, seized narcotics or dangerous drugs. I have supervised the activities of numerous informants and cooperating witnesses who have provided information and assistance resulting in drug buys, searches, and arrests. Based on the above experience, I am familiar with the *modus operandi* of persons involved in the illicit distribution of controlled substances, as well as the terminology used by persons involved in the illicit distribution of controlled substances. I am aware that persons involved in the illicit distribution of controlled substances nearly always attempt to conceal their identities and the locations at which drug transactions take place. I know that individuals engaged in organized drug distribution and sales often maintain records of those sales and also maintain extensive contacts with persons from whom they receive drugs and to whom they distribute drugs. It is likewise essential that such organized groups meet to formulate plans concerning narcotics or other illegal activities, and to divide their illegal proceeds.

4. I have also received training in the identification of narcotics, search and seizure issues, and preparing search warrants. I have had experience in surveillance techniques, investigating narcotic and criminal cases, including the preparation and execution of narcotic and other criminal case search warrants and debriefing of defendants, witnesses, cooperating sources and other persons who have personal knowledge of narcotics and criminal violations. I have been involved in narcotic related

arrests and executed search warrants, which resulted in the seizure of narcotics, and supervised the activities of informants who have provided information and assistance resulting in narcotic purchases. I have questioned suspects, debriefed informants and have conferred with other officers and prosecuting attorneys, and as a result have gained experience in investigating drug trafficking organizations.

5. On a regular basis, I review law enforcement bulletins and intelligence reports regarding narcotic trafficking and smuggling, and remain in communication with counterparts in order to keep up to date with modern techniques and trends used by narcotic traffickers in the domestic and international arena.

## PROBABLE CAUSE

6. On April 11, 2023, at approximately 5:03 PM, Ohio State Highway Patrol ("OSP") Troopers, working in conjunction with DEA Cleveland District Office ("CDO") investigators as part of an on-going narcotics investigation, conducted a traffic stop on a silver 2019 Toyota Camry, bearing Ohio license plate JTP7845 for a traffic violation in the vicinity of State Route 42 and Shurmer Place in Strongsville, Ohio, for failure to signal a lane change. The vehicle eventually came to a stop on Carol Dr., just north of Shurmer Rd. Upon the vehicle coming to a stop, the rear passenger, later identified as BRANDON KINGSTON, exited from the rear passenger door and attempted to flee on foot. OSP Troopers gave chase on foot and immediately detained KINGSTON by forcing KINGSTON to ground, which caused plastic bags containing blue pills, which your Affiant suspects to be fentanyl pills,[1] to fall from KINGSTON'S pocket onto the ground. As OSP Troopers placed KINGSTON into custody the plastic bags inadvertently

---

[1] On April 12, 2023, CDO investigators conducted a field test on the suspected fentanyl pills, which tested positive for the presence of fentanyl, a Schedule II controlled substance.

3

came open, and the suspected fentanyl pills went into the yard of a residence. OSP Troopers and CDO investigators eventually recovered the suspected fentanyl pills, which weighed approximately 351 gross grams, from the yard of the residence. Upon reviewing the OSP Troopers body worn camera, CDO investigators observed KINGSTON pull a zip lock bag from the pocket of his hooded sweatshirt just prior to OSP Troopers taking KINGSTON into custody. OSP Troopers and CDO investigators also located additional loose suspected fentanyl pills, approximately 51 gross grams, from the backseat of the Toyota Camry.

7. OSP Troopers identified the driver of the vehicle as Dawnteasha Crumedy and the front seat passenger as KENNETH WARE. OSP Troopers advised WARE, KINGSTON, and Crumedy of their *Miranda* Rights, and CDO investigators conducted an interview of all parties as they were seated in separate OSP Trooper vehicles. WARE eventually admitted to CDO investigators that he (WARE) had picked up KINGSTON from his residence, which was located nearby, in order to conduct a narcotics transaction with a third party in Strongsville, Ohio. WARE eventually also admitted that WARE had provided the recovered suspected fentanyl pills to KINGSTON in order for KINGSTON to conduct the transaction with the third party. According to WARE, he would have made approximately $2,500.00 had the narcotics transaction occurred.

8. WARE also provided investigators consent to search his two cellular phones. On one of the phones, CDO investigators observed a text message conversation between WARE and a cellular phone number 216-XXX-1644,[2] saved as "Brandon"[3] in

---

[2] This telephone number has been redacted for the purposes of this affidavit.
[3] According to CLEAR, a law enforcement database that has proved reliable in the past, cellular phone number 216-XXX-1644 belongs to BRANDON KINGSTON on Carol Dr., Strongsville, Ohio.

4

WARE'S phone. More specifically, CDO investigators observed a conversation from April 11, 2023, between WARE and KINGSTON that appeared to be related to the narcotic investigation described by WARE. At approximately 12:18 PM, KINGSTON sent a text message that said, "Bro he wants to do 5k at 2 a pop what should I say". Based on training and experience and information gathered throughout this investigation, Affiant believes that "5k" is a reference to 5,000 pills, and that "2 a pop" refers to the price per pill as two dollars. WARE responded, "ok" and then "I can do that" (referring to 5,000 suspected fentanyl pills for $2.00 apiece). The conversation then continued, and WARE and KINGSTON appeared to continue to discuss the anticipated narcotics transaction. At one point during the conversation, WARE stated, "Bro I have 2500 p's for him." Based on training and experience and information gathered throughout this investigation, Affiant believes that "p's" is a reference to Percocet pills, which Affiant knows is how fentanyl pills are routinely disguised and marketed. Affiant believes that in this message, WARE stated that he has 2,500 fentanyl pills for the third party customer. Based on the text message conversation, investigators further believe WARE provided the recovered suspected fentanyl pills to KINGSTON.

---

KINGSTON also provided cellular phone number 216-XXX-1644 as his phone number to CDO investigators.

## CONCLUSION

9. Based on the above, there is probable cause to believe that KENNETH WARE and BRANDON KINGSTON have violated 21 U.S.C. §§ 846 and 841(a)(1) (b)(1)(A) in the Northern District of Ohio, Eastern Division.

_____
Jonathan Fraser
Special Agent
Drug Enforcement Administration

Sworn to via telephone on this 13th day of April, 2023 after submission by reliable electronic means.  Fed. R. Crim. P. 3, 4(d), and 4.1

_____
Jonathan D. Greenberg
U.S. Magistrate Judge